# BEASON v. WESTERN MEAT COMPANY.

No. 2288.   Decided February 19, 1912 (124 Pac. 335).

1. PLEADING—ISSUES, PROOF AND VARIANCE—TIME.   An allegation in the complaint as to the time when a contract for services of a broker was made need not be proved as laid; the time not being material.   (Page 405.)

2. APPEAL AND ERROR—RESERVATION IN LOWER COURT OF GROUNDS OF REVIEW—REQUEST FOR INSTRUCTIONS.   In an action to recover commissions due under a brokerage contract, where an instruction given had made proof of the time laid in the complaint material, a request for an instruction that such time was not material is not a condition precedent to review; for, at most, it would merely raise a conflict in the instructions.   (Page 405.)

3. TRIAL—INSTRUCTIONS—CONSTRUCTION.   In an action for commissions under a brokerage contract, the complaint alleged that the contract was entered into between August, 1908, and January, 1909.   An instruction, given at the request of plaintiff, charged that, if defendant employed plaintiff as a broker, as alleged in the complaint, then plaintiff might recover; while an instruction, given at defendant's request, charged that, before there could be a finding for plaintiff, the jury must be satisfied that between August, 1908, and January, 1909, the defendant employed plaintiff, as alleged in the complaint.   Held, that the instruction given at the request of plaintiff did not make the time of the contract of employment material as did defendant's instruction.   (Page 406.)

4. APPEAL AND ERROR—REVIEW—HARMLESS ERROR—INSTRUCTIONS.   In the above case, the jury returned into court asking for further information, and whether their decision should be based upon the charge in reference to the time as laid in the complaint.   Held, that the charge, having erroneously made time material, was prejudicial.   (Page 406.)

APPEAL from District Court, Second District; *Hon. N. J. Harris,* Judge.

Action by C. M. Beason against Western Meat Company.

Judgment for defendant.   Plaintiff appeals.

REVERSED AND REMANDED.

*A. G. Horn* for appellant.

*Edward McGurrin* and *W. E. Rydalch* for respondent.

FRICK, C. J.

Appellant brought this action to recover for services rendered upon an alleged commission contract entered into between him and the respondent corporation. After alleging the corporate capacity and place of business of respondent, and that it was engaged in the business of buying and shipping live stock, paragraph three of the complaint reads as follows:

"(3) That between the 1st day of August, 1908, and the 1st day of January, 1909, the defendant employed said plaintiff as such broker to investigate and report the conditions, price, quality, and amount of the cattle market throughout the State of Utah and elsewhere, with a view to future purchase of such stock by the defendant, and then and there agreed to pay this plaintiff the sum of fifty cents per head for all cattle which would be quoted by said plaintiff to said defendant and purchased by it as the result of such investigation and quotation by said plaintiff; that in pursuance thereof the said plaintiff investigated the said market, as aforesaid, and quoted to said defendant the condition, price, quality, and amount of 3000 head of cattle at Logan, Utah, belonging to one Hansen, all of which were accepted by said defendant and purchase of said cattle made by it pursuant to the terms and conditions aforesaid, and that said defendant then and there became indebted to this plaintiff in the sum of $1500, no part of which has been paid; and that the entire sum thereof is now due and owing from said defendant to the plaintiff."

Appellant also alleged a demand for payment of the amount claimed in said paragraph, and refusal to pay, and prayed judgment for $1500 and costs.

Respondent filed its answer to the complaint, in which it, in effect, denied all of the allegations we have set forth, and in substance averred that whatever services appellant had

rendered for respondent had been fully paid; that during
the months of December, 1908, and January, 1909, appel-
lant "voluntarily furnished the defendant information con-
cerning some cattle, which cattle the defendant thereafter
negotiated for and purchased." Respondent further averred
that in February, 1909, it had paid to and appellant had
received and accepted the sum of $239 as payment in full
for the services rendered, as aforesaid.

Upon the foregoing issues, a trial to a jury resulted in a
verdict for respondent. The court entered judgment upon
said verdict, from which this appeal is prosecuted.

The errors assigned are:   (1) That the court erred in its
charge to the jury; (2) in refusing to give the jury further
information asked for by them after they had retired to de-
liberate upon their verdict; and (3) because the verdict is
not supported by any evidence, and hence the judgment has
no support in law.

At the trial, appellant produced evidence which tended to
establish the following facts:   That prior to the commence-
ment of the action he had been acquainted with respondent
for about twelve years; that during that time he had bought
cattle or live stock on commission for the respondent in the
State of Utah and elsewhere; that in July, 1908, he went to
San Francisco, where respondent's principal place of busi-
ness was located, and while there he saw Mr. Hough (who,
it seems, was the general manager of respondent), for the
purpose of making arrangements to work for respondent for
a salary, instead of on the commission basis of fifty cents per
head for cattle purchased, as he had theretofore been doing;
that Mr. Hough said that he would talk the matter over with
Mr. Swift, the president of the respondent, and would notify
appellant later. From the printed abstract, it appears that
appellant testified further as follows. "We talked further
about my investigating the stock market here, keeping in
touch with it, and advising them of the condition of the
market and the cattle in this country. I told Mr. Hough I
would keep him posted on the cattle market here, the num-
ber of cattle, location, freight rates, and prices, and he said

he would refer my proposition to headquarters concerning my future pay; and he told me to go ahead, the same as I had been, and if they made any change he would advise me later. I came back to Utah, and after a few days looking up the condition of the cattle business I had a call from Mr. Swift, president of the company, to go to Salt Lake and see him, which I did. Mr. Swift told me he had a letter from Mr. Hough in regard to me looking after the cattle in this country for the defendant, and asked me how I was getting my pay. I said they were paying me a commission of fifty cents per head; but I had made application for a salary position for the year around. After talking about the condition of the cattle business, he told me he had no instructions to give, but to go ahead and keep in touch with the three houses, writing them and keeping them posted; and he said: 'I will refer the matter to Mr. Hough when I get to San Francisco, and we talk the matter over, and, if there is any changes made Mr. Hough will make the change.' After that I kept reporting to the company every few days, beginning with July 21, 1908, which was the first report I made to them."

Pursuant to the foregoing arrangement, appellant wrote respondent, under date of July 21, 1908, and again on the 18th day of August following, giving it information with regard to his ability to buy certain beef cattle and mutton sheep, quoting prices. Respondent replied to the letters, informing appellant that it could not then handle or use any of the "stock" referred to by him; but "we will be pleased to take the matter up with you—pertaining to further purchases." After this letters were exchanged between appellant and respondent at intervals, in which appellant kept respondent informed of the live stock situation in his territory. It could subserve no useful purpose to refer to the correspondence in detail. It must therefore suffice for us to say that during the fall of 1908 appellant notified respondent of the 3000 head of Hansen cattle and quoted prices for which they could be bought, and which cattle respondent

subsequently bought from Hansen through one of its men, who was sent to Utah for that purpose.

After appellant had rested, respondent's counsel interposed a motion for nonsuit: (1) Because there was no evidence to sustain the allegations of the complaint "that between the 1st day of August, 1908, and the 1st day of January, 1909, the defendant employed said plaintiff," etc.; and (2) because there is a material variance between the allegations and the proof, in that the proof shows that appellant's alleged contract, under which he claims, was made, if made at all, some time before the time he alleged it was made. The court overruled the motion for nonsuit, and respondent's counsel then moved for a continuance of the case upon the ground of surprise. The latter motion was based upon the ground that appellant in his complaint alleges "that his contract was made with the defendant between the 1st day of August, 1908, and the 1st day of January, 1909," while the evidence shows it "was made in San Francisco with the general manager of the company, not between the dates specified in the complaint, but during the month of July, 1908." This motion was denied. Respondent then proceeded with the case by producing evidence which tended to support the averments of its answer.

The court, upon appellant's theory of the case, charged the jury as follows: "(4) If you find from the evidence that the defendant employed the plaintiff as a broker to investigate the cattle market, as alleged in the complaint, and to report its condition to said defendant, and that the defendant then and there agreed to pay the plaintiff the sum of fifty cents per head for all cattle so quoted by him to said defendant and purchased by it as the result of such investigation and quotation by said plaintiff, and that as a result thereof, and in pursuance thereof, said plaintiff investigated said cattle market and reported the same to said defendant, and that the defendant acting thereon purchased from one Hansen 3000 head of cattle at Logan, Utah, and that said cattle were included in the investigation and report of said plaintiff to said defendant, then I charge you that your

verdict should be for the plaintiff in the sum of $1500, together with interest at eight per cent per annum, to be computed in the manner hereinafter explained to you."

Upon respondent's request, the court charged the jury in instruction No. 8 as follows: "(8) *You are instructed that before you can find the issues in favor of the plaintiff and against the defendant you must be satisfied by a preponderance of the evidence that between August* 1, 1908, *and January* 1, 1909, *the defendant employed the plaintiff, as alleged in paragraph three of the complaint,* and agreed to pay him the sum of fifty cents per head for all cattle quoted by the plaintiff to the defendant and purchased by the defendant as a result of such quotation, and, unless the plaintiff has established such employment, as alleged by him, to your satisfaction by a preponderance of the evidence, your verdict must be in favor of the defendant."

These two instructions illustrate the different theories of the respective parties with respect to the allegations contained in paragraph three of the complaint. Appellant excepted to the italicized portion of the latter instruction, and now insists that the court erred in limiting the right to recover as stated therein. In connection with the foregoing, it is also important to consider the following proceedings: After the jury had retired to deliberate upon their verdict, and after having been in consultation for about three hours, they, about midnight, returned into court, and, pursuant to Comp. Laws 1907, sec. 3156, asked the court for further information. The following proceedings then took place: "Juror Barker: We want the information in regard to your charge to the jury there whether our decision depends entirely on your charge in reference to paragraph three of the complaint, I understand it, whether our decision depends entirely on your charge to the jury in regard to paragraph three of the complaint, wherein the complaint states that there was an agreement made at a certain time between the defendant and the company in this case. Do you understand me? The Court: Well, gentlemen, the only thing that I can say to you is the court has instructed you as to

the law in the case; and it is your duty to follow it. I
might say further that you should consider these instruc-
tions as a whole, consider them together as one charge, and
not single out any one of the instructions, or any clause in
them, as an independent proposition; that you should read
over the entire instructions, or consider them, at least,
whether you desire to read them or not, and consider them
together as an entirety. Juror Barker: In your instruc-
tion, you refer specifically to paragraph three of the com-
plaint, wherein, in paragraph three of the complaint, it
alleges between August, at a certain time, and another month,
at a certain time, there was a certain agreement between
the two parties in litigation, unless we find that is true, un-
less the preponderance of the evidence states that that is true,
then we are to find in favor of the defendant, as I understand
it. The Court: It is your duty—the only thing you can
do is to take these instructions, and if you do not have them
in mind, you may read them over, as you are entitled to
take them again with you into the jury room, and consider
them all, and make your findings from the evidence in ac-
cordance with the instructions given as an entirety, as I say.
Now, that is the only information I can give you, gentlemen."
The jury again retired to deliberate further, and within a
few minutes thereafter returned into court with a verdict
in favor of respondent.

Keeping in mind the entire proceedings which we have
outlined above, it is clear to our minds that, in view of the
court's rulings on the admission of appellant's evidence with
regard to the contract of employment, the overruling of the
motion for a nonsuit and denying the motion for a con-
tinuance, appellant's counsel may have been misled, and thus
made no effort to amend his complaint to conform to the
proof, or to the court's views as expressed in instruction No.
8. The court must have considered the allegations respect-
ing the time when the alleged contract was made as im-
material, when he ruled on the admission of evidence and
the motion for a continuance on the ground of variance, for
the reason we have given. Had the court then indicated that

he considered the allegation with regard to the time when
the alleged contract was entered into as material and con-
trolling, the appellant could have amended his complaint,
and could thus have conformed to the court's views. More-
over, if the court was of that mind when he ruled on the
motion for nonsuit, appellant then could have amended his
complaint, and thus have afforded the respondent every op-
portunity to meet the allegations of the complaint, as amend-
ed, before it entered upon its defense. Appellant's counsel
was, however, not apprised of the court's attitude until the
jury in effect were told that time was material, and, unless
they found from the preponderance of the evidence that the
alleged contract was entered into between the dates named
in paragraph three of the complaint, appellant must fail.

Appellant's counsel has cited a large number of cases
wherein it is held that, under circumstances like those present
in this case, time is not of the essence and is not a material
or controlling factor in the case. It is not necessary for us
to refer to the numerous cases, since the law is elementary
that an allegation of time, under the circumstances of this
case, is not controlling, and the party responsible for
such an allegation is not bound to prove it literally,     **1, 2**
but may show the actual transaction, although it oc-
curred at a time other than that alleged. Under circum-
stances like those in this case, it is the transaction, rather than
the time at which it occurred, that is the material thing.
Counsel for respondent frankly concede the rule to be as
stated above; but they insist that the rule does "not apply in
this appeal." The reason assigned why it does not is be-
cause, they contend, appellant's counsel should have offered
a special instruction, whereby the jury were told that the
time, as alleged in the complaint, was not controlling. In
making this contention, counsel overlook the important fact
that, if appellant's counsel had offered such an instruction,
and the court had given it, its only effect could have been
to create a conflict in the instructions. The court had
already charged the jury, at respondent's request, that the
time, as alleged in the complaint, was material. If, there-

fore, upon appellant's request or otherwise, the court had also charged that the time was not material, there would have been a clear conflict between the two instructions. This of itself would have been sufficient to vitiate the verdict and judgment. Counsel's suggestions are therefore not tenable.

But, say counsel for respondent, the appellant cannot complain, because instruction No. 4, which we have herein given in full, is precisely to the same effect as instruction No. 8, which was given at the request of respondent, **3, 4** and which is the one to which appellant's counsel took exceptions. We cannot agree with counsel. Nor do we think that such was their nor the court's construction of instruction No. 4 at the time of the trial. If such had been their construction, or if the court had so understood it, why give instruction No. 8, the one in which the time limit is specifically stated? If the jury had already been told that the time alleged was material and controlling, why repeat it in No. 8? Furthermore, it is manifest from the juror's statements to the court that the whole controversy arose over the meaning to be given to instruction No. 8, and not over what was said in instruction No. 4. We think, in view of the whole record, it is manifest that the appellant was prejudiced because instruction No. 8 did not correctly reflect the law, and because the court did not withdraw that instruction from the jury when they asked for further information, or, at least, modify it, so as to eliminate therefrom the statement that the time when the alleged contract was entered into was material and controlling.

Appellant's contention that there is no evidence to support the verdict, and that the judgment, for that reason, must fail, is not tenable. We need not discuss the evidence, except to say that there is sufficient evidence, if the jury believed it to be true, to sustain a verdict for the respondent.

From what has been said, it necessarily follows that the judgment cannot be permitted to stand. The judgment therefore is reversed, and the cause is remanded to the district court of Weber County, with directions to set aside the

verdict and judgment and grant a new trial, and to proceed with the case in accordance with the views herein expressed. Appellant to recover his costs in this court.

McCARTY and STRAUP, JJ., concur.